```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
KOREA TRADE INSURANCE CORPORATION,                                    :
                                                                      :
                               Plaintiff,                             :   11-CV-8980 (JMF)
                                                                      :
               -v-                                                    :   OPINION AND ORDER
                                                                      :
NEEMA CLOTHING, LTD.,                                                 :
                                                                      :
                               Defendant.                             :
                                                                      :
----------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/28/2015

JESSE M. FURMAN, United States District Judge:

On May 23, 2012, Plaintiff Korea Trade Insurance Corporation ("Plaintiff") secured a default judgment against Defendant Neema Clothing, Ltd. ("Neema") (Docket No. 15). But Plaintiff has not yet been paid. Thus, Plaintiff filed a Judgment Creditor's Special Petition for Turnover Order (Docket No. 17) ("Turnover Petition") seeking to recover from Respondent James Ammeen, Sr. ("Respondent"), Neema's founder, Chief Executive Officer, and majority shareholder. Plaintiff originally asserted two claims: (1) that it was entitled to a turnover order based on an alleged fraudulent conveyance from Neema to Respondent; and (2) that Respondent was personally liable to Plaintiff based on theories of alter ego and veil piercing. On June 25, 2014, the Court determined that it had subject matter jurisdiction only over the fraudulent conveyance claim, and dismissed the petition to the extent that it brought independent claims against Respondent on an alter ego theory. (Docket No. 32). For the reasons explained below, the Court will hold a trial to resolve the fraudulent conveyance claim.

## BACKGROUND

As noted, Respondent is Neema's founder, CEO, and majority shareholder. (Decl. R. Zachary Gelber Supp. Pl. J. Creditor's Special Pet. Turnover Order Pursuant N.Y. CPLR § 5225(b)

& Finding Neema's Majority Shareholder Personally Liable Outstanding J. (Docket No. 19) ("Gelber Decl."), Ex. A. at 20, 29-30, 39-40). Neema became insolvent in 2011. (*Id.*, Ex. A at 49). In December of that year, Plaintiff filed this lawsuit against Neema, alleging that Neema had not paid for goods purchased from a company that had assigned its rights to Plaintiff. (Docket No. 1). The following month, Respondent began transferring a total of $1,855,980 from Neema's corporate accounts to his personal accounts. (*Id.*, Ex. B at 238-39; Ex. D. at 2-4). Respondent claims that the transfers were payments by Neema on a series of loans that he had allegedly made to the company. (*Id.*, Ex A at 143-44; Ex. D at 2-4).

In May 2012, Plaintiff secured a default judgment against Neema in the amount of $966,347.80. (Docket No. 15). Neema has not paid any part of that judgment. (Pl. J. Creditor's Mem. Law Supp. Special Pet. Turnover Order Pursuant N.Y. CPLR § 5225(b) & Finding Neema's Majority Shareholder Personally Liable Outstanding J. (Docket No. 18) ("Pl.'s Mem.") 6). Accordingly, Plaintiff seeks an order requiring Respondent to return the money he received from Neema so that it can satisfy the judgment. (Docket No. 17).

## DISCUSSION

"In a special turnover proceeding based on New York law, made applicable pursuant to Rule 69 [of the Federal Rules of Civil Procedure], a court may grant summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter." *Cordius Trust v. Kummerfeld*, No. 99-CV-3200 (DLC), 2004 WL 616125, at *6 (S.D.N.Y. Mar. 30, 2004) (internal quotation marks omitted), *aff'd in part, vacated in part*, 153 F. App'x 761 (2d Cir. 2005); *see also In re Port of N.Y. Auth.*, 18 N.Y.2d 250, 255 (1966) (holding that the summary judgment standard applies to CPLR special proceedings). Accordingly, "[s]ummary relief may not be granted unless the submissions of the parties taken together show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a

judgment as a matter of law." *Cordius Trust*, 2004 WL 616125, at *6 (internal quotation marks omitted). As with a motion for summary judgment, "[t]he moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

Plaintiff alleges that Neema's transfer of nearly $2 million to Respondent was a fraudulent conveyance. Under New York law, a plaintiff may prevail on a fraudulent conveyance claim if: (1) the conveyance was made without fair consideration; (2) the conveyor is a defendant in an action for a money judgment or has had a judgment in such action docketed against him; and (3) the defendant has failed to satisfy the judgment. *See, e.g.*, *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006) (citing N.Y. Debtor and Creditor Law ("DCL") § 273-a). The defendant's intent is irrelevant. *See* N.Y. DCL § 273-a; *see also Bank of Commc'ns v. Ocean Dev. Am., Inc.*, 904 F. Supp. 2d 356, 359-60 (S.D.N.Y. 2012). Here, there is no dispute that the second and third requirements are met: Plaintiff obtained a money judgment in its action against Neema, and Neema has thus far failed to satisfy the judgment. Accordingly, the sole issue is whether the first requirement — the absence of fair consideration — has been met. (*Compare* Pl.'s Mem. 10-12 *with* Resp't James Ammeen's Mem. Law Opp'n Pl.'s Pet. Turnover Order Pursuant N.Y. CPLR 5225(b) (Docket No. 33) ("Resp't's Mem.") 4-10 (contesting only the question of fair consideration)).

Consideration for property is fair if: (1) "in exchange for such property . . . as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied"; or (2) the property is "received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property . . . obtained." N.Y. DCL § 272. Accordingly, "'fair consideration' requires not merely that the value of the consideration be

3

roughly equivalent to the property in issue but also that there be good faith on the part of the parties involved in that conveyance." *United States v. McCombs*, 30 F.3d 310, 326 n.1 (2d Cir. 1994). Plaintiff cites a long line of cases for the proposition that "preferential transfers to directors, officers and shareholders of insolvent corporations in derogation of the rights of general creditors do not fulfill the good faith requirement of the Debtor and Creditor Law." *Farm Stores, Inc. v. Sch. Feeding Corp.*, 477 N.Y.S.2d 374, 378 (App. Div. 2d Dept. 1984); *see also, e.g.*, *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634-35 (2d Cir. 1995); *Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 937 (S.D.N.Y. 1995). (Pl.'s Mem. 10-12). In light of those cases, Plaintiff argues, the transfers here were, as a matter of law, made without fair consideration and, by extension, it is entitled to judgment as a matter of law.

The problem with Plaintiff's argument is that Respondent claims to have been a secured creditor of Neema. (Resp't's Mem. 5-9). The rationale for the general rule that transfers to insiders are deemed to be per se lacking in fair consideration is that they are "preferential" and, thus, "in derogation of the rights of general creditors." *Farm Stores*, 477 N.Y.S.2d at 378. As at least two other courts have recognized, however, that rationale does not hold where the transfer satisfies a secured obligation. *See In re Northstar Dev. Corp.*, 465 B.R. 6, 13-14 (Bankr. W.D.N.Y. 2012) (holding that a transfer to an insider who is a secured creditor was not in bad faith because "[a]s a general rule, . . . no preference occurs upon the payment of a secured debt"); *Rebh v. Rotterdam Ventures Inc.*, 716 N.Y.S.2d 457, 458-59 (App. Div. 3d Dep't 2000) (denying plaintiffs' fraudulent conveyance claim because there was no "inequitable consequence to plaintiffs" when a secured creditor preferred his own claims). As the *Northstar* Court explained, "no preference occurs upon the payment of a secured debt. For a preference to arise, a creditor must realize some improvement in position. The satisfaction of secured debt causes no improvement of position, in that the transfer represents only an exchange of value for the equivalent release of collateral." 465 B.R. at 14

4

(citations omitted).  The Court agrees.  Accordingly, it is not enough for Plaintiff to rely solely on the fact that Respondent was an insider to establish that the transfers from Neema were lacking in fair consideration.[1]

The question becomes, then, whether there is a genuine issue of material fact with respect to Respondent's status (or lack thereof) as a secured creditor.  Respondent contends that he is entitled to be repaid for money that Neema's senior creditor took from him when Neema became insolvent.  (Resp't's Mem. 5-10).  Specifically, Respondent alleges that he had pledged $6 million of his own money as collateral to Neema's senior lender, CIT, so that Neema could obtain a loan.  (Gelber Decl., Ex. B at 211).  When Neema failed, CIT foreclosed on that collateral.  (*Id.*).  Respondent argues that, by acting as a surety, he became subrogated to all of CIT's rights, including the right to repayment.[2]  (Resp't's Mem. 9-10).  Consequently, he claims, "he had the right to recoup from Neema's remaining assets the full $6,000,000 he had paid as guarantor of Neema's debts."  (*Id.* at 10).  In support of his contention, Respondent cites cases for the proposition that, when a surety

---

[1] The *Northstar* Court left open the possibility that "special circumstances could indicate bad faith" where the transferee was a secured creditor.  *Northstar Dev. Corp.*, 465 B.R. at 14.  Here, the fact that Neema did not begin repaying the alleged loans to Respondent until after the company became insolvent could support a finding of such bad faith.  That, however, is a factual question that must be decided at trial.

[2] Plaintiff argues that Respondent's subrogation argument is beside the point because the transfers from Neema to Respondent "were made in repayment of Ammeen's personal loans to the company and *not* pursuant to subrogation rights derived for any payments made to CIT."  (Pl. J. Creditor's Supp. Mem. Law Resp. Court's Order Oct. 31, 2014 (Docket No. 48) ("Pl.'s Second Supp. Mem.") 2).  The cases that Plaintiff cites, however, merely stand for the proposition that when a debtor owes multiple debts to the same creditor, the *debtor* "has the initial right to specify which obligation he wishes the payment to be applied to."  *MTB Bank v. Fed. Armored Exp., Inc.*, 949 F. Supp. 226, 229 (S.D.N.Y. 1997), *rev'd on other grounds*, 175 F.3d 283 (2d Cir. 1999); *see also Beyer Bros. of Long Island Corp. v. Kowalevich*, 454 N.Y.S.2d 444, 445 (App. Div. 2d Dep't 1982) (same).  They do not suggest that, if the Court rejects one reason why a creditor is entitled to payment, a creditor cannot argue in the alternative that it is entitled to the money for other reasons.  (Pl.'s Second Supp. Mem. 2).

5

discharges the primary debtor's obligation, he or she is generally entitled to a right of subrogation. *See, e.g.*, *Chem. Bank v. Meltzer*, 93 N.Y.2d 296, 302-04 (1999).[3]

Subrogation rights, however, can be waived. *See, e.g.*, *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 635-36 (2d Cir. 1995) (dismissing a fraud claim when the guaranty provided that "Guarantor expressly waives any and all rights of subrogation"); *accord Tsakopolous v. Alameda Invs.*, LLC, No. 13-CV-1917 (JGB), 2014 U.S. Dist. LEXIS 135325, at *8-21 (C.D. Cal. Sept. 24, 2014). And here, the contract that Respondent himself initially submitted with his opposition explicitly provided that any subrogation rights that he may have had were waived. (Decl. James M. Hirschhorn (Docket No. 33) ("Hirschhorn Decl."), Ex. 10 at 2-3).[4] Nevertheless,

---

[3] On October 31, 2014, Respondent requested leave to submit supplemental authorities. (Docket No. 42). Because such authority would have no effect on the Court's analysis or conclusions, the request is denied as moot.

[4] Respondent argues that, even if the waiver is valid, it cannot be enforced by Korea Trade because it was not a third-party beneficiary to its contract with CIT. (Resp't James Ammeen's Supp. Mem. Law Regarding James Ammen's Rights Subrogation (Docket No. 39) ("Resp't's Supp. Mem.") 5). Neither case that Respondent cites, however, dealt with a waiver. (*Id.* (citing *Braten v. Bankers Trust Co.*, 60 N.Y.2d 155, 159, 164 (1983) (granting summary judgment against a company's supplier seeking to enforce a bank's alleged oral promise to continue to extend credit to the company when it was not third-party beneficiary to the agreement); *Bank Leumi Trust Co. v. Klein*, 92-CV-2016 (RPP), 1993 WL 403967, at *4 (S.D.N.Y. Oct. 7, 1993) (finding that the defendant could not invoke an alleged agreement between the IRS and a third party to refrain from further tax levies because it was not a third-party beneficiary to the agreement))). By contrast, in *Alameda Investments, LLC*, 2014 U.S. Dist. LEXIS 135325, the Court explicitly rejected an argument similar to the one Respondent makes. In that case, the appellants and Alameda had entered into a joint venture which sold property to Pulte Corporation. *Id.* at *1-2. The sale agreement provided that the venture would re-purchase the property (the "Guaranty") in certain circumstances. *Id.* Pursuant to that agreement, Pulte sued both the appellants and Alameda. *Id.* at *3. Prior to trial, the appellants entered into a settlement agreement with Pulte, and Pulte released all claims, including those against Alameda. *Id.* at *5. The appellants then sought contribution from Alameda, but Alameda invoked the waiver of contribution contained in the Guaranty. *Id.* at *8-9. The appellants argued that Alameda could not invoke the waiver, which they claimed was intended only to benefit Pulte. *Id.* at *12-14. The Court, however, rejected that argument because the text of the waiver was not so limited. *Id.* at *13-15. The same is true here. The Guaranty states that Respondent "waives and relinquishes . . . *any* right of subrogation," not simply that it cannot enforce any such right against CIT. (Hirschhorn Decl., Ex. 10 at 2-3). Thus, no right to

6

after the Court requested supplemental briefing on the issue (Docket No. 37), Respondent submitted revisions to the contract stating that "[a]fter all of the Obligations have been paid in full and the Agreements have been terminated, the undersigned shall be subrogated to [CIT's] rights."  (Decl. James Ammeen (Docket No. 40), Ex. 2 at 1-2; *see also id.*, Ex. 1 at 2).  Plaintiff argues that Respondent has not met his burden, even under that amended agreement, because he has not shown that CIT was ever paid in full.  But Respondent testified at his deposition that CIT had been "paid off" (Gelber Decl., Ex. B at 254), and he submitted a March 2, 2012 Termination Agreement signed by CIT, Neema, and Respondent, which states that the factoring agreements between CIT and Neema are "terminated, canceled and of no further force and effect" (Hirschhorn Decl., Ex. 11 at 1). Taken together, those documents are sufficient to create a material question of fact as to whether CIT was repaid.[5]

That does not end the analysis, however, as Respondent cannot rely on the Termination Agreement to create a genuine factual dispute with regard to the payments made prior to March 2, 2012, the Agreement's effective date.  (Hirschhorn Decl., Ex. 11 at 1).  Moreover, Respondent has not demonstrated that he could have been subrogated to CIT's rights between March 2, 2012, and October 5, 2012, as CIT maintained a security interest in Neema's assets until the later date.  (Decl. R. Zachary Gelber (Docket No. 49) ("Second Gelber Decl."), Ex. 2).  *See* Restatement (First) of

---

subrogation ever arose under the agreement, and whether Plaintiff can be considered a third-party beneficiary is irrelevant.

[5]   Although that evidence is enough to create a triable issue of fact, the Court is highly skeptical that it would suffice at trial, particularly since the Termination Agreement lists several surviving obligations.  (Hirschhorn Decl., Ex. 11 at 2).  In addition, Plaintiff makes a colorable argument in its second supplemental memorandum of law that Respondent should not be permitted to rely on the amendments because they were not turned over during discovery.  (Pl.'s Second Supp. Mem. 2 n.1).  The Court declines to rule on that issue at this time, as Respondent has not had an opportunity to respond, but the parties should be prepared to address the appropriate time and manner for Plaintiff (should it wish to do so) to raise the issue of whether Respondent should be precluded from introducing the amendments at trial.

Security § 141(b) & cmt. e; *Rabo Agrifinance, Inc. v. Terra XXI Ltd.*, No. 06-CV-153 (MLR), 2007 WL 2446278, at *10 (N.D. Tex. Aug. 29, 2007) ("If the collateral for the obligation paid by the surety also secures the principal debtor's other obligations to the creditor, then the surety may not acquire a subrogated interest in the collateral till someone satisfies the other obligations."). Finally, Respondent has introduced no evidence demonstrating that he perfected his security interest in Neema's assets subsequent to October 5, 2012, through the filing of a financing statement, *see* Cal. U. Comm. Code § 9310(a), and has made no argument that a financing statement was not required in his case. Accordingly, Respondent has not shown that he was entitled to any subrogation rights either before or after October 5, 2012.[6]

Separate and apart from the question of whether Respondent was subrogated to CIT's rights as a secured creditor, Respondent argues that he was entitled to payment as a secured creditor because he had made several loans to Neema that the company had not yet repaid. Here too, Plaintiff offers compelling reasons to be skeptical of Respondent's assertions. First, Neema's failure to pay the loans prior to insolvency could support an inference that Respondent did not act in good faith. (*See* Reply Br. Supp. Pl. J. Creditor's Special Petition Turnover Order Pursuant N.Y. CPLR § 5225(b) (Docket No. 36) ("Pl.'s Reply Mem.") 3-5). Second, for a security agreement to be valid under New York law, there must be a writing that shows "intent to form a security interest, authentication and a description of the security," *Stearns v. Empower Federal Credit Union*, No. 09-BR-30148 (MMC), 2009 WL 4330832, at *3 (Bankr. N.D.N.Y. Nov. 30, 2009), and there is no single such writing between Respondent and Neema. (*See* Pl.'s Reply Mem. 6-7). With respect to the first contention, however, the Court is required to draw all inferences in Respondent's favor, and

---

[6] Notwithstanding the Court's ruling, the Court may allow Respondent to attempt to prove at trial that he was subrogated to CIT's rights after October 5, 2012, if Respondent, through a motion *in limine* or other appropriate means, can point to relevant legal authority of which the Court is not currently aware suggesting that he was subrogated to CIT's rights at that time.

8

the inference that Plaintiff seeks to draw is not the only permissible inference. And with respect to the latter contention, "courts have read several documents together and looked at the surrounding circumstances to find the existence of security agreements." *In re Bucala*, 464 B.R. 626, 631 (Bankr. S.D.N.Y. 2012). Here, while a close call, the documents that Respondent offers as proof of his security interest — several signed notes (Hirschhorn Decl., Ex. 1) and two unsigned security agreements (*Id.*, Ex. 2, Ex. 3) — are sufficient, when read together, to create a triable issue of fact as to whether Respondent had a valid security interest. *See Trinity Constr., Inc. v. John R. Mott, Inc.*, 145 A.D.2d 720, 722 (App. Div., 3d Dept. 1988) (finding a valid security agreement where the relevant promissory notes were "signed by [the] plaintiff, named the parties, contained a description of the collateral and specifically stated that it was to 'secure the transfer' of the collateral").

Finally, Plaintiff argues that, even if the security agreements are valid, Respondent's security interest was limited to $450,000 because his interest in the remaining loans was not perfected. (Pl.'s Reply Mem. 8-9). Specifically, Plaintiff notes that the Uniform Commercial Code ("UCC") financing statement submitted by Respondent provides only that the security interest is granted pursuant to an agreement dated November 15, 1991 (Hirschhorn Decl., Ex. 5; Pl.'s Reply Mem. 8), which, in turn, states only that Respondent loaned Neema $450,000 and makes no reference to the possibility of future loans. (Hirschhorn Decl., Ex. 2; Pl.'s Reply Mem. 8-9). But while a financing statement must adequately describe the pledged *collateral*, there is no requirement that it disclose the amount of the loan. *See* NY UCC § 9-502; *see also* UCC § 9-402 (1972). Plaintiff does cite one case suggesting that a financing statement referring to a security agreement that does not mention the possibility of future loans is inadequate to secure such loans. (Pl.'s Reply Mem. 9 (citing *Marine Midland Bank v. Conerty Pontiac-Buick, Inc.*, 352 N.Y.S.2d 953, 961 (Sup. Ct. Albany Cty. 1974)). The reasoning of that case, however, was specifically disapproved of by the Review Committee for Article 9 of the Permanent Editorial Board for the UCC. *See In re*

*Gruder's Will*, 89 Misc. 2d 477, 480-81 (Surrogate's Court Nausau Cnty., N.Y. 1977) (disagreeing with *Marine Midland Bank* and discussing the review committee's position). Moreover, as Plaintiff itself acknowledges (Pl's Reply Mem. 8), the primary purpose of a financing statement is to give notice of the existence of a security interest so that a potentially interested party is aware that he should make further inquiry. *See PaineWebber Inc. v. Nowogugu*, No. 98-CV-2441 (DLC), 1998 WL 740873, at *1 n.1 (S.D.N.Y. Oct. 23, 1998). Thus, there is no "requirement that a secured creditor must refile each time it enters into a new loan agreement with a debtor to whom the creditor lends money on a regular basis." *Frank v. James Talcott, Inc.*, 692 F.2d 734, 738 (11th Cir. 1982); *see also, e.g.*, *Harder v. U.S.*, No. 91-CV-10513 (DPW), 1993 WL 667770, at *5 (D. Mass. 1993) (collecting cases). Instead, "security agreements may be perfected by earlier filings, even when those agreements were not contemplated at the time of filing." *Harder*, 1993 WL 667770, at *5. That is the case here. Accordingly, the Court rejects Plaintiff's argument that the financing statement was insufficient as a matter of law to perfect an interest of more than $450,000.

## CONCLUSION

For the foregoing reasons, although Plaintiff makes a compelling case that Neema's transfers to Respondent qualify as fraudulent conveyances, the Court cannot grant judgment to Plaintiff as a matter of law. Specifically, there are genuine disputes of material fact with respect to, at a minimum, whether the particular circumstances of the transfers at issue indicate bad faith and whether Respondent was entitled to payment as a secured creditor because of the personal loans he made to Neema. (As noted, Respondent may not continue to argue that he was a secured creditor by virtue of having been subrogated to CIT's rights, unless he is able to show that the Court overlooked some legal authority that would support a conclusion that he was subrogated to CIT's rights after October 5, 2012.) Accordingly, the Court must hold a trial with respect to Plaintiff's fraudulent conveyance claim.

Within **fourteen days** of this Opinion and Order, the parties shall submit letters to the Court indicating (1) whether that claim is triable of right by jury; and (2) assuming the claim is triable of right by jury, whether the parties demand a jury trial.  Plaintiff and Respondent shall then appear for a pretrial conference on **February 13, 2015**, at **2:15 p.m.**, in Courtroom 1105 of the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York.  Plaintiff and Respondent should confer in advance of the pretrial conference with respect to the timing of a trial and pretrial submissions and with respect to whether they would want a referral to the assigned Magistrate Judge for settlement purposes.

The Clerk of Court is directed to terminate Docket No. 17.

SO ORDERED.

Date: January 28, 2015
New York, New York

_____
JESSE M. FURMAN
United States District Judge